# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* YOUNG, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SUBURBAN HOME PHYSICIANS<br>d/b/a DOCTOR AT HOME, *et al*.<br><br>Defendants, | Case No. 14-cv-02793<br><br><br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

This *qui tam* action was initiated by Albert Young,[1] Teresa Dedina, Vianka Calderon, and D'Ander Hooks-Czapansky (collectively, "Relators") on behalf of the United States against dozens of different individuals and corporate entities. [98] at 1-66. Some (though not all) of these defendants have moved to dismiss the claims pending against them. *See* [105], [117], [132], [135], [138], [143], [146], [149], [163]. The pending motions to dismiss are granted, as discussed more fully below.

## I.    Background

Relators are all former employees of Defendant Suburban Home Physicians, Inc. ("Suburban"). [98] at 2. Suburban was owned and operated by Defendants Jerry Gumila ("Jerry") and Diana Jocelyn Gumila ("Diana"), and did business as "Doctors at Home." *Id.* at 2-3.

---

[1] Albert Young passed away after the initiation of this action, and he has been replaced in this case by the executors of his estate. [187] at 1.

Relators allege that the presently-moving defendants, through their interactions with Suburban, Jerry, and Diana, violated both the False Claims Act ("FCA"), 18 U.S.C. § 3729 *et seq.*, and the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b. More specifically, Relators allege that Suburban and the Gumilas coordinated with the various co-defendants to falsify Medicare forms, through backdating and upcoding, in exchange for reciprocal patient referrals. Diana, for her part, was previously convicted of 21 counts of health care fraud in connection with her work at Suburban. *See United States v. Gumila*, No. 14-cr-411-1, Dkt. 74 (N.D. Ill. April 14, 2016).

Given the number of parties and claims at issue, the allegations against each presently-moving defendant are broken down below.[2]

## A. The Patel Defendants

Relators allege that defendants Naimish Patel ("Naimish") and Prashant Patel ("Prashant") "put up the funds to bankroll" Suburban and "received part of

---

[2] Relators' various allegations regarding the collective group of "Home Health Defendants" are not included in the Court's summary. *See, e.g.,* [98] at 18 (The "Doctors at Home Defendants and the Home Health Defendants knowingly and willfully solicited or received both Forms 485 and patients from each other as remuneration in return for referring patients to each other for the subsequent furnishing of Home Health services paid for by Medicare."). These allegations are facially ambiguous, as "Home Health Defendants" is never defined in the Amended Complaint. Relators, in implicit recognition of this deficiency, attempt in their subsequent briefing to define "Home Health Defendants" as "each of the Movants," with "the exception of defendants Namish [sic] Patel and Prashant Patel." [169] at 2. Relators' *ex post* adjustment is rejected. As a preliminary matter, the Court evaluates the claims and allegations in the Amended Complaint without the benefit of any party's subsequent gloss. *See Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) ("When ruling on a Rule 12(b)(6) motion, a court generally may consider only the plaintiff's complaint."). Moreover, Relators' definition is substantively untenable. Any general allegation against "the Movants" (even less Naimish Patel and Prashant Patel) necessarily lacks the particularity and specificity required in this context. *See Suburban Buick, Inc. v. Gargo,* No. 08-cv-0370, 2009 WL 1543709 at *4 (N.D. Ill. May 29, 2009) ("The complaint should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").

the illicit profits." *Id.* at 20. This allegation is grounded in Diana's objection to her pre-sentence investigation report and sentencing memorandum. *See United States v. Gumila*, No. 14-cr-411-1, Dkt. 89 at *9 (N.D. Ill. July 11, 2016, 2016) ("One of the owners of Doctor at Home on paper was Jocelyn Gumila's husband, Jerry, although he received a much smaller share of the billings, since, as he was informed by the other partners, Naimish Patel and Prashant Patel, they alone had put up the funds to bankroll the company.").

Relators also make various allegations against a collective group of "Doctor at Home Defendants," which is broadly defined in the Amended Complaint to include "Jerry, Jocelyn, Naimish, Prashant and Suburban Home Physicians." [98] at 4. The allegations against the collective Doctor at Home Defendants include:

- A claim that the Doctor at Home Defendants "entered into an oral agreement and conspiracy" with certain other defendants to backdate and falsify a Form 485 regarding patient ES, [98] at 9;

- An allegation that the Doctor at Home Defendants certified a falsified Form 485 regarding patient VG, *id.* at 11;

- A claim that the Doctor at Home Defendants presented fraudulent claims regarding the treatment of patient VN in August of 2013, *id.* at 12-14;

- An allegation that the Doctor at Home Defendants presented fraudulent claims regarding the treatment of patient VN in September of 2013, *id.* at 14-15; and

- A claim that the Doctor at Home Defendants presented a false claim for payment to Medicare regarding the treatment of patient SM, *id.* at 14-15.

## B. Govvas Defendants

Defendants Valentine Akpata ("Valentine") and Gloria Akpata ("Gloria") are the two principals of Defendant Govvas Health Care Services, Inc. (collectively, the "Govvas Defendants"). [98] at 3. Relators allege that the Govvas Defendants:

- Received referrals for patients DR and AC from the Doctor at Home Defendants on June 7, 2013, *id.* at 17;

- Received referrals for patients JH, BJ and ET from the Doctor at Home Defendants on July 30, 2013, *id*;

- Received a referral for patient KW from the Doctor at Home Defendants on August 6, 2013, *id.*; and

- Materially "solicited or received patients from Serenity Marketing and Sundae Williams (collectively 'Serenity') in exchange for a fee paid to Serenity," this fee "constituted remuneration for Serenity referring patients" to the Govvas Defendants, and the Govvas Defendants were paid by Medicare for claims related to these home health services, *id.* at 31.

## C. Comet/Miranda Defendants

Relators claim that Defendants Christopher Theophilius a/k/a Christopher Nwakah ("Christopher"), Jessica Nwakah ("Jessica"), and Vivian Nwakah ("Vivian") "control" both Defendant Comet Home Healthcare, Inc. ("Comet") and Defendant Miranda Home Healthcare, Inc. ("Miranda"). *Id.* at 5. Throughout the Amended Complaint, Comet, Miranda, Christopher, Jessica and Vivian are "sometimes" referred to as the "Miranda Defendants" or the "Comet/Miranda Defendants." *Id.*[3]

Relators additionally claim that:

---

[3] Relators have consented to Vivian's dismissal. [169] at 20. Her individual motion to dismiss [138] is accordingly granted, and Vivian is dismissed without objection. References to the "Comet/Miranda Defendants" in this Opinion, therefore, should be understood to include only Christopher, Jessica, Comet and Miranda.

- The Doctor at Home Defendants referred nineteen homebound patients (RG, JR, AR, ER, DT, EB, MC, RD, DH, JM, RM, MM, MM, RM, MR, MS, ET, VT and EV) to the Comet/Miranda Defendants between October 26, 2011 and December 22, 2012, *id.* at 17;

- The Comet/Miranda Defendants referred two of their own patients (RK and KL) to the Doctor at Home Defendants on April 13, 2012 and December 9, 2012, respectively, *id.*;

- From April 2013 through June 2013, the Miranda Defendants provided skilled-nursing services to patient JR without the requisite Form 485, *id.* at 27;

- The Miranda Defendants then "drafted and sent a backdated Form 485" to the Doctor at Home Defendants "to reflect that patient JR was certified for Home Health Services from 4/13/13 to 6/11/13," *id.* at 28; and

- The Doctor at Home Defendants then "affixed a physician signature to the backdated Form 485 for patient JR . . . without having seen the patient during the requisite 90/30 day period," and then returned the signed Form 485 to the Miranda Defendants, *id.*

### D. A&Z Defendants

Defendants Felix Omorogbe ("Felix") and Patricia Omorogbe ("Patricia") are the two principals of Defendant A&Z Home Health Care, Inc. (collectively, the "A&Z Defendants"). [98] at 3. Relators allege that:

- On July 13, 2013, the A&Z Defendants received referrals for patients GH, RH, ES, BP and ED from the Doctor at Home Defendants; *id.* at 17;

- From November of 2013 through January of 2014, the A&Z Defendants rendered skilled-nursing services for patient EA, even though patient EA was not confined to the home and those skilled-nursing services were not medically necessary, *id.* at 22;

- The A&Z Defendants knowingly presented to Medicare a claim for payment or approval for the skilled-nursing services they had rendered to patient EA, which was paid in the amount of $1,975.09, *id.* at 23;

- The A&Z Defendants' claim to Medicare related to patient EA was supported by a falsified Form 485 generated by the Doctor at Home Defendants, *id.*;

- From May of 2014 through July of 2014, the A&Z Defendants rendered skilled-nursing services for patient WC, even though patient WC was not confined to the home and those skilled-nursing services were not medically necessary, *id.* at 24;

- The A&Z Defendants knowingly presented to Medicare a claim for payment or approval for the skilled-nursing services they had rendered to patient WC, which was paid in the amount of $1,975.09, *id.*;

- The A&Z Defendants' claim to Medicare related to patient EA was supported by a falsified Form 485 generated by the Doctor at Home Defendants, *id.* at 25; and

- The A&Z Defendants "materially solicited or received patients" from Serenity "in exchange for a fee paid to Serenity," this fee "constituted remuneration for Serenity referring patients to the A&Z Defendants," and the A&Z Defendants were paid by Medicare for claims related to these home health services, *id.* at 29-30.

**E.  Physicians Preferred Defendants**

Defendants Felicia Hayes ("Felia") and Toshita Brown Greenfield ("Toshita") are officers at Defendant Physicians Preferred Home Care, Inc. (collectively, the "Physicians Preferred Defendants").  [98] at 5.  Relators allege that:

- "In or about Mid-2012, the Physicians Preferred Defendants learned of a potential Medicare review/audit of its home health records," *id.* at 10;

- Soon "after learning about that potential review/audit, the Physicians Preferred Defendants entered into an oral agreement and conspiracy with the Doctor at Home Defendants whereby the Physicians Preferred Defendants would--in violation of Medicare Rules--draft and send in excess of 100 backdated 485 Forms to the Doctor at Home Defendants," *id.* at 11;

- The "Physicians Preferred Defendants, through their agent Dawn [last name not provided] . . . prepared and forwarded in excess of 100 485 Forms to the Doctor at Home Defendants for backdating and physician

signatures," even though "there was no 'face-to-face encounter' as required by Medicare between patient and any medical professional," *id.*;

- "Defendant Doctor at Home, at Defendant Jocelyn's direction, affixed a physician signature to every backdated 485 Form provided by the Physicians Preferred Defendants and faxed those falsified forms back to the Physicians Preferred Defendants including the 485 Form for patient VG," *id.*; and

- The "Physicians Preferred Defendants" submitted claims related to "patient VG" to Medicare, thereby "certifying that, as a condition of payment, the Form 485 for patient VG and others was on file when it was not," *id.*

## F.    Bestmed/Adonis Defendants

Defendant Akpevwe S. Olidge ("Akpevwe") is president of both Defendant Bestmed-Care Services, Ltd. and Defendant Adonis Inc. (collectively, the "Bestmed/Adonis Defendants").  [98] at 6.  Relators allege that:

- From April 2012 through July 2012, the Doctor at Home Defendants referred 13 patients (DB, WB, BC, BC, CJ, NJ, CO, BP, ER, GS, FS, BS and EE) to the Bestmed/Adonis Defendants, *id.* at 17;

- From December 2011 through April 2012, the Bestmed/Adonis Defendants referred 8 patients (JB, EF, PG, MJ, RR, RR, OS and RW) to the Doctor at Home Defendants, *id.*; and

- The Bestmed/Adonis Defendants "materially solicited or received patients" from Serenity "in exchange for a fee paid to Serenity," this fee "constituted remuneration for Serenity referring patients to the Bestmed/Adonis Defendants," and the Bestmed/Adonis Defendants were paid by Medicare for claims related to these home health services, *id.* at 32.

## II.  Legal Standard

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  To survive a motion to dismiss, a complaint must first provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice" of what the claim is "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Second, the complaint must contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  That is, the allegations must raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  The "amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged," but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Limestone Dev. Corp. v. Vill. Of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).  In evaluating the complaint, the Court accepts all well-pleaded

allegations as true and draws all reasonable inferences in favor of Plaintiff. *Iqbal*, 556 U.S. at 678.

Additionally, Federal Rule of Civil Procedure 9(b) mandates that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated "with particularity." In adding "flesh to the bones of the word particularity," the Seventh Circuit has "often incanted that a plaintiff ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotations omitted). In other words, if the fraudulent scheme involves misrepresentation, the plaintiff must state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

These heightened pleading requirements serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *Id.* The importance of providing fair notice means that a plaintiff who pleads fraud "must 'reasonably notify the defendants of their purported role in the scheme.'" *Id.* at 778 (quoting *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992)); *see also Guarantee Co. of N. Am., USA v. Moecherville Water Dist., N .F.P.*, No. 06-cv-6040, 2007 WL 2225834, at *2 (N.D. Ill. July 26, 2007) ("The purpose of the more

restrictive pleading standard is to ensure that the accused party is given adequate notice of the specific activity that the plaintiff claims constituted the fraud, so that the accused party may file an effective responsive pleading.").  To that end, "Rule 9(b) is of especial importance in a case involving multiple defendants.  Where there are allegations of a fraudulent scheme with more than one defendant, the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant."  *Balabanos v. N. Am. Inv. Grp., Ltd.*, 708 F. Supp. 1488, 1493 (N.D. Ill. 1988).

## III.    Analysis

### A.    The Patel Defendants

Relators' claims against Naimish and Prashant are made pursuant to the FCA (Counts I-III, V-IX) and the AKS (Count IV).  The Court addresses each in turn.

#### 1.    Counts I-III, V-IX

To establish liability under the FCA, a relator must allege: "(1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false."  *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 998 (7th Cir. 2014) (internal quotations omitted).  In addition, "the misrepresentation must be material to the other party's course of action."  *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2001 (2016).

The FCA's materiality and scienter requirements are "rigorous." *Id.* at 2002. Critically, a "misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." *Id.* at 2003. Moreover, the requisite scienter is not mere negligence but "actual knowledge," "deliberate ignorance of the truth or falsity," or "reckless disregard of the truth or falsity" of the relevant information. 31 U.S.C. § 3729(b)(1)(A); *see also United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invs., LLC*, 828 F.3d 587, 593 (7th Cir. 2016).

Naimish and Prashant insist that Relators have failed to allege the requisite scienter, as "mere ownership or service in senior management of a company submitting false claims is not enough to establish culpability." [129] at 7 (citing *United States ex rel. Landis v. Tailwind Sports Corporation*, 51 F. Supp. 3d 9, 54 (D.D.C. 2014) ("[T]o satisfy Rule 9(b), the relator must do more than draw inferences of a conspiracy to defraud the government based on [defendant] being a shareholder and a corporate official at [the company].").

This argument is well-taken. The only allegations that specifically reference Naimish or Prashant concern their initial funding of, and putative ownership interests in, Suburban. [98] at 3 (Prashant and Naimish, "according to documents submitted by Defendant Jocelyn in her criminal case," were partners "in Defendant Suburban Physicians LLC who received part of the illicit profits of Defendant Suburban," and "put up the funds to bankroll the company"); *id.* at 20 ("Defendants Naimish and Prashant, the two 'partners' in the entity Defendant Suburban

Physicians LLC who 'put up the funds to bankroll the company' and received part of the illicit profits of Defendant Suburban Home Physicians LLC, have never been licensed to practice medicine in Illinois."). These allegations, taken alone, essentially contend that Naimish and Prashant owned part of Suburban and accordingly received a portion of Suburban's profits. They say nothing regarding any specific misrepresentations caused or made by the Patels, or any culpable scienter on their part.

Relators, in response, note that there are many other allegations throughout the Amended Complaint regarding the "Doctor at Home Defendants," who are defined to include the Patels. [169] at 8 ("Relators' Amended Complaint includes the Patels as part of the 'Doctor at Home Defendants' based upon allegations that the Patels were partners in the entity part of the Doctor at Home Defendants.").

Relators' invocation of the generalized category of "Doctor at Home Defendants," however, is unavailing. In fact, by relying on this broad catch-all, Relators have essentially conceded that their allegations fail to reflect the requisite particularity for pleading fraud. These generalized assertions, regarding a group of disparate defendants, engaged in various different types of permissible and impermissible practices, are so broad as to be essentially meaningless within the context of this case. *See Balabanos*, 708 F. Supp. at 1493 ("Where there are allegations of a fraudulent scheme with more than one defendant, the complaint

should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").[4]

2.     **Count IV**

Under the AKS, it is illegal to either:

> knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . .
>
> [or]
>
> knowingly and willfully offer[] or pay[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . . .

42 U.S.C. § 1320a-7b(b)(1)(A), (b)(2(A). Thus, to assert an AKS claim, the "relator must allege, with the specificity required by Rule 9(b)," that the defendant: (1) knowingly and willfully; (2) offered, paid, solicited, or received; (3) remuneration; (4) in return for purchasing or ordering any item or service for which payment may be made under a federal health care program. *United States v. A Plus Physicians Billing Serv., Inc.*, 13-cv-7733, 2015 WL 8780548, at *2 (N.D. Ill. Dec. 15, 2015). The Seventh Circuit has further explained that Congress, in the AKS, "intended to

---

[4] The Patels also argue that Count V specifically fails because it only concerns licensing issues under Illinois law, which are not an appropriate basis for a FCA claim. Because each of Relators' current FCA claims against the Patels lacks the requisite factual specificity, however, this Court need not resolve this issue.

criminalize the receipt of kickbacks in return for a physician's certification or recertification, through a signed Form 485, that a patient requires Medicare-reimbursed care." *United States v. Patel*, 778 F.3d 607, 616 (7th Cir. 2015).

Here again, Relators have failed to state their allegations with the requisite "plausibility and particularity." *Universal Health Servs., Inc.*, 136 S. Ct. at 2004 n.6. In lieu of allegations specifically reflecting a payment or referral from Naimish or Prashant, the Amended Complaint makes vague allusions to the "Doctor at Home Defendants." *See generally* [98] at 17-18. These references to a general category of five different defendants are insufficient to clear Rule 9(b)'s threshold. *See Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990) (affirming dismissal of complaint because it "lump[ed] all the defendants together and [did] not specify who was involved in what activity").

## B. Govvas Defendants

Both of Relators' claims against the Govvas Defendants are brought pursuant to the AKS (Count IV and Count XI). The Court addresses each in turn.

### 1. Count IV

Count IV, as discussed *supra*, generally alleges that all of the defendants cross-refer patients to accumulate services for which Medicare will pay. [98] at 15-19. With respect to the Govvas Defendants specifically, Relators allege only that they received the following referrals from the Doctor at Home Defendants: "on June 7, 2013 patients DR and AC; on July 30, 2013 patients JH, BJ, and ET; and on August 6, 2013 patient KW." [98] at 17.

14

This bare allegation remains insufficient to support an AKS claim, because it invokes broad categories of defendants rather than enumerating the responsible parties with particularity. The Amended Complaint also noticeably lacks any specific allegations contending that the Govvas Defendants offered or gave anything whatsoever to the Doctor at Home Defendants in exchange for the referral of six patients. There are no allegations that the Govvas Defendants, specifically, ever exchanged any Form 485's with the Doctor at Home Defendants. And finally, there are no specific allegations supporting a finding of scienter. *See Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 1000 (7th Cir. 2014) (stating that vague allegations that a corporation acted with scienter do not clear the pleading threshold).

### 2. Count XI

Relators' allegations against the Govvas Defendants in support of Count XI are similarly lacking. Once again, Relators assert general claims that: (1) the Govvas Defendants "solicited or received patients" from Serenity "in exchange for a fee paid" to Serenity; (2) this fee "constituted remuneration for Serenity referring patients" to the Govvas Defendants; and (3) the Govvas Defendants were paid by Medicare for claims related to these home health services. *Id.* at 31.

As a preliminary matter, Relators fail to allege how or why these alleged payments were impermissible, aside from Relators' conclusory remark. More troubling, Relators also fail to identify which patients the Govvas Defendants received from Serenity, who among the Govvas Defendants submitted claims to

Medicare, and whether, in fact, the patients the Govvas Defendants allegedly received from Serenity were the same patients for whom they requested and received payment from Medicare. Quite simply, Relators' allegations in support of Count XI fall far short of establishing the familiar journalistic refrain of "who, what, when, where, and how." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust*, 631 F.3d at 441-42.

### C. Comet/Miranda Defendants

Relators' claims against the Comet/Miranda Defendants sound in the AKS (Count IV) and the FCA (Count IX). Neither is tenable as currently pled.[5]

#### 1. Count IV

In support of their claim against the Comet/Miranda Defendants in Count IV, Relators allege that: (1) the Doctor at Home Defendants referred nineteen homebound patients to the Comet/Miranda Defendants between October 2011 and December 2012; and (2) the Comet/Miranda Defendants referred two patients to the Doctor at Home Defendants between April 2012 and December 2012. These allegations, standing alone, do not support an AKS claim. There are no specific allegations as to who among the diverse group of Comet/Miranda Defendants referred or received patients. Similarly, there are no specific allegations concerning who referred patients to the Comet/Miranda Defendants among the many separate

---

[5] The Comet/Miranda Defendants also argue that: (1) Relators' claim in Count IV must fail insofar as an alleged exchange of Form 485's and patients "does not qualify as 'remuneration' under the AKS, pursuant to 42 C.F.R. § 1001.952; (2) Relators' claim in Count IX fails to allege materiality with particularity; and (3) both of Relators' claims are precluded by the public disclosure bar. Because Relators have failed to clear the preliminary threshold of Rule 9(b), however, this Court need not reach such arguments at this time.

individuals captured within the definition of the "Doctor at Home Defendants." And once again, there are no specific allegations against these defendants supporting the requisite finding of scienter.

### 2. Count IX

Relators further allege, in support of their FCA claim against the Comet/Miranda Defendants, that: (1) the Comet/Miranda Defendants provided skilled-nursing services to patient JR without the requisite Form 485; (2) the Comet/Miranda Defendants then "drafted and sent a backdated Form 485" to the Doctor at Home Defendants; (3) the Doctor at Home Defendants executed the backdated Form 485 without meeting with the patient; and (4) Medicare paid the Comet/Miranda Defendants for patient JR's care. [98] at 27-29.

These allegations suffer from the same flaw endemic to the Amended Complaint as a whole—by indiscriminately conflating multiple defendants within unwieldy categories, Relators have made it virtually impossible to identify "who" perpetuated which portions of the putative fraud. *See Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 778 (7th Cir. 1994) ("[T]he complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal citations omitted); *Suburban Buick, Inc. v. Gargo,* No. 08-cv-0370, 2009 WL 1543709 at *4 (N.D. Ill. May 29, 2009) ("The complaint should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").

The Amended Complaint also fails to note the date the bill for patient JR's care was submitted, or the amount of that bill. These failures, compounded by Relators' more fundamental shortcomings identified previously, doom this claim.

### D. A&Z Defendants

Relators' claims against the A&Z Defendants are made pursuant to both the FCA (Count VI and Count VII) and the AKS (Count IV and Count X). None of these claims are currently viable.

#### 1. Count VI and Count VII

Relators, in support of their FCA claims against the A&Z Defendants, allege that: (1) the A&Z Defendants provided skilled-nursing services to patients EA and WC without the requisite Form 485; (2) the A&Z Defendants then "drafted and sent" backdated Form 485's to the Doctor at Home Defendants; (3) the Doctor at Home Defendants executed the backdated Form 485's without meeting with either patient; and (4) Medicare paid the A&Z Defendants for care related to patients EA and WC. [98] at 22-25.

The A&Z Defendants rightly note that these allegations do not convey "the required who, what, when, where, and how of the underlying alleged fraud." [144] at 10. Indeed, there is simply "no allegation as to who specifically" committed any purported FCA violations. *Id.* at 11. Relators have given the A&Z Defendants (and the Court) insufficient notice, and their FCA claims against the A&Z Defendants cannot stand as currently pled.

## 2. Count IV and Count X

In support of their claim in Count IV, Relators allege that the Doctor at Home Defendants, in July of 2013, referred patients GH, RH, ES, BP and ED to the A&Z Defendants. [98] at 17. This allegation, standing alone, is insufficient to state an AKS claim. Here again, the Amended Complaint does not identify who, specifically, engaged in the ostensibly fraudulent referrals. There are also no specific allegations suggesting that the A&Z Defendants offered or gave anything whatsoever to the Doctor at Home Defendants in exchange for its referral of five patients. Nor are there specific allegations supporting a finding of scienter.

Relators also allege that: (1) the A&Z Defendants "solicited or received patients" from Serenity "in exchange for a fee" paid to Serenity; (2) this fee "constituted remuneration for Serenity referring patients" to the A&Z Defendants; and (3) the A&Z Defendants were paid by Medicare for claims related to these home health services. *Id.* at 29-31. These allegations, essentially copied from Relators' earlier assertions regarding Serenity and other co-defendants, are similarly inadequate. Relators have: (1) failed to explain why these payments to Serenity were impermissible; (2) failed to identify which patients the A&Z Defendants ostensibly received from Serenity; (3) neglected to identify who among the A&Z Defendants submitted the relevant claims to Medicare; and (4) declined to explain whether the patients the A&Z Defendants allegedly received from Serenity were the same patients for whom they requested and received payment from Medicare. Once

again, Relators' reliance on overbroad definitions has robbed their allegations of the plausibility and particularity required by Rule 9(b).

### E.      Physicians Preferred Defendants

Relators originally named the Physicians Preferred Defendants in both Count II and Count IV of their Amended Complaint; however, Relators failed to respond to the Physicians Preferred Defendants' arguments regarding Count IV (and did not even list the Physicians Preferred Defendants in the related portion of their chart summarizing the pending claims, [169-1] at 27).   Count IV, as it pertains to the Physicians Preferred Defendants only, is accordingly dismissed without objection. The Court proceeds to consider the arguments concerning Count II on the merits.

#### 1.      Count II

In support of Count II, Relators claim that in 2012, "the Physicians Preferred Defendants learned of a potential Medicare review/audit of its home health records," and subsequently "entered into an oral agreement and conspiracy with the Doctor at Home Defendants," whereby the Physicians Preferred Defendants would, "through their agent Dawn," compose and "send in excess of 100 backdated 485 Forms to the Doctor at Home Defendants." [98] at 10-11. Relators further claim that the Physicians Preferred Defendants submitted claims related to "patient VG" to Medicare, thereby "certifying that, as a condition of payment, the Form 485 for patient VG and others was on file when it was not." *Id.* at 11.

Relators' claims regarding the Physicians Preferred Defendants are facially deficient, for essentially the same reasons the Court has previously discussed

regarding other claims. Here again, the Relators rely on overbroad definitions and conclusory statements in lieu of the requisite specificity and particularity. By failing to parse out their separate allegations regarding Felicia, Toshita or "their agent Dawn" (last name not provided), Relators have fatally undermined their current claims against the Physicians Preferred Defendants.

F. **Bestmed/Adonis Defendants**

Both of Relators' claims against the Bestmed/Adonis Defendants are made pursuant to the AKS (Count IV and Count XII), but neither is pled with the requisite particularity.

1. **Count IV**

Relators allege that the Bestmed/Adonis Defendants, from December 2011 through April 2012, "referred 8 patients (JB, EF, PG, MJ, RR, RR, OS and RW) to the Doctor at Home Defendants." [98] at 17. Relators further claim that the Doctor at Home Defendants referred thirteen patients (DB, WB, BC, BC, CJ, NJ, CO, BP, ER, GS, FS, BS and EE) to the Bestmed/Adonis Defendants from April 2012 through July 2012. *Id.*

This claim is, like the vast majority of Relators' Amended Complaint, undone by its reliance upon the overly broad definition of the Doctor at Home Defendants. By generally invoking a group comprised of four individuals and a separate corporate entity, Relators have made it impossible to identify the corresponding party who allegedly engaged in this kickback scheme with the Bestmed/Adonis Defendants. *See Suburban Buick, Inc. v. Gargo,* No. 08-cv-0370, 2009 WL 1543709

at *4 (N.D. Ill. May 29, 2009) ("The complaint should not lump multiple defendants together, but should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant.").

### 2. Count XII

Relators also allege that: (1) the Bestmed/Adonis Defendants "solicited or received patients" from Serenity "in exchange for a fee paid" to Serenity; (2) this fee "constituted remuneration for Serenity referring patients" to the Bestmed/Adonis Defendants; and (3) the Bestmed/Adonis Defendants were paid by Medicare for claims related to these home health services. *Id.* at 29-31. These "copy-and-paste" allegations similarly fail to satisfy Rule 9(b). Relators have once again failed to: (1) explain why these payments to Serenity were impermissible; (2) identify which patients the Bestmed/Adonis Defendants ostensibly received from Serenity; (3) identify any specific payments from the Bestmed/Adonis Defendants to Serenity; (4) identify any particular claims paid by Medicare related to Serenity; or (5) explain whether the patients the Bestmed/Adonis Defendants allegedly received from Serenity were the same patients for whom they requested and received payment from Medicare.

### G. Leave to Re-plead

In their response to the present motions, Relators request leave to re-plead any claims dismissed by the Court, and predictably, Defendants insist that leave to re-plead should not be granted. Relators have the better of this argument.

In large part, Relators' current Amended Complaint fails due to its conflation of the various parties, but "[l]ack of factual clarity is normally a flaw that can be corrected through amendment of the complaint." *Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995). Should Relators elect to re-plead any of the claims dismissed today, they "should clearly distinguish" between (and explicitly enumerate) *each* individual and company referenced in a given allegation. *In re Corus Bankshares, Inc.*, 503 B.R. 44, 53 (N.D. Ill. 2013).

## IV. Conclusion

The motion to dismiss filed by Naimish Patel and Prashant Patel [105] is granted. The motion to dismiss filed by Valentine Akpata, Gloria Akpata, and Govvas Healthcare Services, Inc. [117] is granted. The motion to dismiss filed by Christopher Theophilus a/k/a Christopher Nwakah and Comet Home Healthcare, Inc. [132] is granted. The motion to dismiss filed by Jessica Nwakah and Miranda Home Healthcare, Inc. [135] is granted. The motion to dismiss filed by Vivian Nwakah [138] is granted, and she is dismissed without objection. The motion to dismiss filed by Felix Omorogbe, Patricia Omorogbe, and A&Z Home Health Care, Inc. [143] is granted. The motion to dismiss filed by Felicia Hayes and Physicians Preferred Home Care, Inc. [146] is granted (and dismissed without objection as to Count IV only). The motion to dismiss filed by Akpevwe Olidge, Bestmed-Care Services, Ltd., and Adonis, Inc. [149] is granted. The motion to dismiss filed by Toshita Brown Greenfield [163] is granted (and dismissed without objection as to Count IV only). Relators are given leave to re-plead any claims dismissed pursuant

to today's order, except for those claims or parties that were dismissed without objection.

The remainder of Relators' Amended Complaint stands. The status hearing previously set for May 30, 2017 stands. At that time, the parties shall be prepared to discuss additional case management dates.

Date: May 15, 2017

Entered:

John Robert Blakey
United States District Judge