# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* YOUNG, *et al.*, | |
| Plaintiffs, | Case No. 14-cv-02793 |
| v. | Judge John Robert Blakey |
| SUBURBAN HOMES PHYSICIANS, d/b/a DOCTOR AT HOME, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

This *qui tam* action is brought by Allen Young, Sylviette Young,[1] Teresa Dedina, Vianka Calderon, and D'Ander Hooks-Czapansky (collectively, "Relators") on behalf of the United States against both individuals and corporate entities for different forms of Medicare fraud. [200]. This Court previously dismissed a number of claims and parties from the case, including claims against Defendant Bestmed-Care Services, Ltd. [193]. Relators amended their Complaint [200], and Bestmed-Care moves to dismiss the remaining claim against it [207]. For the reasons explained below, Bestmed-Care's motion is granted.

## I. Background

A brief procedural background follows below. This Court presumes familiarity with, and incorporates by reference, its opinion granting Bestmed-Care's prior motion to dismiss. [193].

---

[1] Allen Young and Sylviette Young have been substituted as relators in place of their father, Albert Young, an original relator in this case who is now deceased. *See* [187].

Relators first amended their complaint in 2016. [98]. In response, many of the numerous Defendants then involved in the case moved to dismiss. [105, 117, 132, 135, 138, 143, 146, 149, 163]. This Court granted the motions but permitted Relators to re-plead most of their claims. [193] at 23–24. Relators filed their second amended complaint in June 2017. [200].

Relators' present complaint alleges violations of the False Claims Act (FCA), 18 U.S.C. § 3279 *et seq.* (Counts I, II, III, and V); and violations of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b (Count IV). The sole claim against Bestmed-Care is Count IV, alleging AKS violations in the form of cross-referring Medicare patients with co-Defendants Suburban Home Physicians and Diana Jocelyn Gumila. [200] at 12–16.

Bestmed-Care moves to dismiss Count IV for failing to state a claim upon which relief can be granted, and for failing to satisfy Federal Rule of Civil Procedure 9(b)'s heightened requirements for pleading fraud. [207, 208]. As discussed below, Bestmed-Care's motion is granted.

## II. Legal Standard

Rule 9(b)'s heightened pleading requirements govern Relators' AKS claims. *See United States v. A Plus Physicians Billing Serv., Inc.*, No. 13-cv-733, 2015 WL 8780548, at *2 (N.D. Ill. Dec. 15, 2015); *see also United States v. Patel*, 778 F.3d 607, 612 (7th Cir. 2015) (The AKS "is designed to prevent Medicare and Medicaid fraud."). Rule 9(b) requires claimants alleging fraud to "state with particularity the circumstances constituting fraud." Specifically, claimants "ordinarily must describe the who, what, when, where, and how of the fraud—the first paragraph of any

newspaper story." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011) (internal quotation marks omitted). Although different cases require different levels of detail to satisfy Rule 9(b), *Pirelli*, 631 F.3d at 442, claimants must inject "precision and some measure of substantiation" into fraud allegations, *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), Relators' complaint must "state a claim to relief that is plausible on its face." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

### III. Analysis

#### A. Particularity

Relators allege that Bestmed-Care cross-referred Medicare-eligible patients with Suburban Home Physicians in 2011 and 2012, in violation of the AKS, 42 U.S.C. § 1320a–7b(b)(1)(A). [200] at 13–15. To bring their AKS claim, Relators "must allege, with the specificity required by Rule 9(b)," that Bestmed-Care: (1) knowingly and willfully; (2) offered, paid, solicited, or received; (3) remuneration; (4)

3

in return for purchasing or ordering any item or service for which payment may be made under a federal healthcare program. *A Plus Physicians*, 2015 WL 8780548, at *2. Here, that standard requires alleging that Bestmed-Care offered or received "remuneration" in return for referring Medicare patients, knowing that such conduct was wrongful. §§ 1320a-7b(b)(1)(A), (b)(2)(A); *see Klaczak v. Consol. Med. Transp.*, 458 F. Supp. 2d 622, 626–27, 675–76 (N.D. Ill. 2006).

In support of their claim, Relators allege that: (1) from December 3, 2011 to April 5, 2012, Suburban Home Physicians referred eight Medicare patients to Bestmed-Care; (2) from April 17, 2012 to December 4, 2012, Bestmed-Care referred 11 Medicare patients to Suburban Home; (3) referring patients constitutes remuneration because of the patients' value in Medicare billings; and (4) the defendants knew their conduct was wrongful because the Stark Act, 42 U.S.C. § 1395nn(a)(1)(A), "prohibits physicians from referring patients to home health agencies when a financial relationship exists between those entities." [200] 12–15.

On these pleadings, Relators again fall short of the particularity that Rule 9(b) requires. Specifically, Relators fail to allege facts that satisfy the AKS scienter requirement by showing that Bestmed-Care knew that such referrals were wrongful. Indeed, Relators fail to allege with specificity that there was any illicit exchange at all. Though "remuneration" can be interpreted broadly under the AKS, Relators must still identify the provision of something of value intended to illegitimately induce the patient referrals. *See United States v. Williams*, 218 F. Supp. 3d 730, 744 (N.D. Ill. 2016); *United States ex rel. Kalec v. NuWave*

4

*Monitoring, LLC*, 84 F. Supp. 3d 793, 806 (N.D. Ill. 2015). This Relators have failed to do.

A key difficulty with Relators' claim against Bestmed-Care arises in the underlying conduct alleged—simply referring patients—which is not categorically unlawful. In fact, the AKS expressly exempts certain referral arrangements from penalties. *See* 42 C.F.R. §§ 1001.952(f), (s). AKS claimants more commonly allege that a party received cash or other improper inducements to refer patients to a specific home healthcare provider. *See, e.g.*, *Patel*, 778 F.3d at 611. In *Patel*, a physician's unreported receipt of cash from the home healthcare service provider to which he referred patients readily gave rise to the inference that the provider gave the physician the cash in exchange for referrals. *Id.* at 619.

By contrast, where a defendant's conduct has a legitimate alternative explanation, claimants must specifically allege facts showing that otherwise permissible conduct is unlawful under the circumstances. *See United States ex rel. Obert-Hong v. Advocate Health Care*, 211 F. Supp. 2d 1045, 1049 (N.D. Ill. 2002); *Klaczak*, 458 F. Supp. 2d at 678. Because referring patients is not by itself unlawful, Relators must allege facts showing that, in this case, such referrals amounted to wrongful remuneration. *See Obert-Hong*, 211 F. Supp. 2d at 1049.

With respect to the AKS scienter requirement, the law does not require a showing that defendants knew of specific provisions of federal law and the "knowing" and "willful" element of an AKS claim may take several forms, but the law does require that claimants plead some facts supporting the inference that

5

defendants knew their conduct was wrongful. *See Klaczak*, 458 F. Supp. 2d at 674–75. Here, Relators have alleged no such facts.

Relators merely claim that Suburban Homes and Bestmed-Care knew their cross-referrals were wrongful "because the medical community is fully aware" that the Stark Act prohibits referrals "when a financial relationship exists" between the referring entities. [200] at 13. Relators then fail to allege, however, any unlawful financial relationship between these defendants. Indeed, by referring patients to an entity that previously referred a handful of patients to it, Bestmed-Care failed to do anything obviously wrongful. From the complaint, as discussed next, this Court cannot conclude that such conduct was wrongful, and can in no way impute such knowledge to Defendant.

Relators' complaint fails to establish the illicit inducement that forms the foundation of an AKS claim. *See A Plus Physicians*, 2015 WL 8780548, at *2. Again, to state a claim under the AKS, Relators need to show that Bestmed-Care offered or received remuneration intended "to *induce*" Suburban Homes "to refer an individual for a service" paid for by Medicare. *Kalec*, 84 F. Supp. 3d at 806 (emphasis added). Absent some "illegal exchange," referrals alone are not improper. *United States v. Addus HomeCare Corp.*, No. 13-cv-9059, 2017 WL 467673, at *7 (N.D. Ill. Feb. 3, 2017).

Here, the alleged facts do not establish with particularity that any exchange occurred, let alone an improper exchange. The referrals that Relators claim constituted illicit remuneration occurred in two periods: Suburban Homes referred a

number of patients to Bestmed-Care over four months, after which Bestmed-Care referred 11 patients to Suburban Homes across eight months. These bare facts do not establish any wrongdoing with the specificity required by Rule 9(b). If this was a *quid pro quo* scheme, did Bestmed-Care promise Suburban Homes to repay its referrals in kind? Or did Suburban Homes merely hope that they would? If so, a mere "hope, expectation or belief that referrals may ensue from remuneration for legitimate services is not a violation of the Anti-Kickback Statute." *United States v. Rogan*, No. 02-C-3310, 2006 WL 8427270, at *16 (N.D. Ill. Oct. 2, 2006) (citing *United States v. McClatchey*, 217 F.3d 823, 834–35 (10th Cir. 2000)). Relators allege no facts to elevate their claim beyond hope or belief.

Nor do Relators allege any of the other traditional hallmarks of an illicit exchange. A facially legitimate exchange may constitute unlawful remuneration if the surrounding circumstances support the inference that the exchange was intended as an illicit inducement. *See Klaczak*, 458 F. Supp. 2d at 678–79. One example of such circumstances occurs when the value conferred on a party to the exchange far exceeds what would be commercially reasonable. *See Obert-Hong*, 211 F. Supp. 2d at 1049. In *Obert-Hong*, a hospital's acquisition of a physician's practice, though facially legitimate, could have constituted illicit remuneration if the relators showed that the terms of sale were "not commercially reasonable." *Id.* Unreasonable terms can be evidence that the transaction was intended as an unlawful economic inducement. *See id.*

7

Even where the value conferred remains difficult to quantify, claimants can also show the illicit nature of an exchange by providing some point of comparison to show the unreasonableness of a facially legitimate exchange. In *Klaczak*, for example, the relators' complaint focused on the discount a hospital allegedly offered to an ambulance service in exchange for referrals. 458 F. Supp. 2d at 611. In that case, the "value" received for referrals was difficult to quantify because it was allegedly conferred through the discount—an absence of value. To show that this constituted illicit remuneration, the relators needed to show that there was a discount *in comparison* to what should have been charged if the contract was legitimate. *Id.* at 678. In other words, where remuneration is difficult to quantify, relators must be able to allege a deviation from the norm such that some unjustified, illegitimate value was conferred on the recipient of the remuneration.

This requirement adheres to the congressional purpose animating the AKS: to protect patients and the Medicare program from "increased costs and abusive practices" resulting from provider decisions "clouded by improper financial considerations." *Patel*, 778 F.3d at 612. Here, Relators have failed to show that any improper financial considerations were at play in Bestmed-Care's referral of patients. That failure remains particularly important here, given that there are any number of legitimate, competing explanations for referring patients, including that Bestmed-Care had exceeded its capacity; that Bestmed-Care regularly referred patients to a variety of other home health service providers and had no particular relationship with Suburban Homes; or even that Bestmed-Care or Suburban Homes

8

merely hoped that cross-referrals would ensue, which is not actionable under the AKS. Relators do not connect any improper "economic incentive" to these referrals, *Obert-Hong*, 211 F. Supp. 2d at 1050, other than the bare allegation that they were undertaken to "defraud Medicare," [200] at 15. Relators, therefore, fail to allege facts showing the "what" or the "how" of the alleged fraud, and have not complied with Rule 9(b). *See Pirelli*, 631 F.3d at 441–42.

It is true that Rule 9(b)'s requirements "are relaxed when the plaintiff lacks access to all facts necessary to detail his claim." *United States ex rel. Kennedy v. Aventis Pharms., Inc.*, 512 F.Supp.2d 1158, 1167 (N.D. Ill. 2007). The relaxed requirements, however, do not relieve a claimant's burden to provide "precision and some measure of substantiation" in bringing their fraud claim. *Acacia Mental Health*, 836 F.3d at 776. Moreover, where all but two Relators previously worked for Suburban Homes, it is not unreasonable to ask that they allege sufficient facts to provide Bestmed-Care with proper notice of its purportedly illicit actions. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994). Absent a clearer indication of what made Bestmed-Care's conduct improper, Relators' claim cannot proceed. Accordingly, Bestmed-Care's motion is granted, and Count IV of Relators' second amended complaint is dismissed.

### B. Leave to Re-plead

Rule 15(a)(2) instructs courts to freely give leave to amend "when justice so requires." Relators' claims against Bestmed-Care were previously dismissed because the first amended complaint failed to clearly distinguish the actions of the various defendants. [193] at 21–22. Relators have cured that defect in their second

9

amended complaint and allege a *quid pro quo* referral scheme between Bestmed-Care and Suburban Homes. Because patient referrals may, under the right circumstances, constitute improper remuneration under the AKS, Relators shall receive a final opportunity to allege, if possible and consistent with their Rule 11 obligations, the additional elements needed to support their claim. In any future amendment to their complaint, Relators should, for example, identify the aspect of the referrals that constituted an improper inducement and explain why Defendants must have known that such referrals were wrongful. Absent such details, they risk a final dismissal with prejudice.

## IV. Conclusion

Bestmed-Care's motion to dismiss Count IV [207] is granted. If they can do so consistent with their Rule 11 obligations, Relators are given leave to re-plead Count IV of their second amended complaint on or before 1/12/2018.

Dated: December 28, 2017

Entered:

_____
John Robert Blakey
United States District Judge